o. Salvage yard.

MASONIC TEMPLE ASSOCIATION OF ST. LOUIS, a corporation, Plaintiff-Appellant,

v.

David H. VICTOR et al., Defendants-Respondents.

No. 37649.

Missouri Court of Appeals, St. Louis District, Division Three.

Dec. 29, 1977.

Motion for Rehearing and/or Transfer Denied Feb. 14, 1978.

Application to Transfer Denied March 13, 1978.

Alan E. DeWoskin, Clayton, for plaintiff-appellant.

James J. Raymond, Clayton, for defendants-respondents.

KELLY, Judge.

This appeal from the Circuit Court of the City of St. Louis presents the single question whether the trial court erred in sustaining the defendants-respondents' Motions for Summary Judgment. Because we conclude that the trial court did so err, we reverse the judgment and remand the cause to the trial court for further proceedings in accord with our holding herein.

Following are the facts gleaned from the record on appeal.

Plaintiff (as appellant, Masonic Temple Association of St. Louis shall hereinafter be identified) is a not for profit corporation incorporated pursuant to the authority of Article 10, Chapter 33 RSMo. 1909, by a decree of the Circuit Court of the City of St. Louis of September 15, 1917, for the purpose of financing, locating erecting, building, establishing, equipping, maintaining and operating a Masonic Temple in the City of St. Louis.

The defendants-respondents are two Lodges of the Ancient Free and Accepted Masons—St. Louis Lodge No. 20 and Aurora Lodge No. 267—and 22 individuals who are members of the two Lodges, 11 from each, as representatives of their respective lodge membership, as a class. Both of the Lodges are unincorporated associations. At the time of the filing of the petition there were approximately 500 members of the St. Louis Lodge No. 20 and 200 members of the Aurora Lodge No. 267.

Prior to the incorporation of the plaintiff a number of Lodges of the Masonic Order held their meetings in a Temple on Grand Avenue in the City of St. Louis. Desirous of erecting a new Temple, representatives of both of these Lodges, together with representatives of 18 other Lodges and two Chapters of the Eastern Star, referred to in the plaintiff's petition as "Original Members," entered into what is identified as the "Temple Basic Contract," wherein the signatories recommended the erection of a Masonic Temple for Masonic purposes only and for the use of the several Masonic bodies and Eastern Star Chapters then meeting at the Grand Avenue Masonic Temple. This Contract provided a method of raising the funds for erection of the new Temple, the amount of contribution thereto by each signatory on a per capita basis, and the time schedule for payment of said contributions. Provision was made in the Contract that each contributing body should also pay its

proportionate share toward the "upkeep" of the Temple, said share to be set by the board of directors of the proposed corporation to be incorporated pursuant to the law governing the organization of Benevolent, Religious, etc. corporations for the purpose of financing, locating, building, establishing, maintaining and operating the proposed new Temple, which would be named "The Masonic Temple Association of St. Louis."

After plaintiff was incorporated it proceeded to erect the new Temple and upon completion thereof, sometime in 1926, these defendants and the other original members who were parties to the Temple Basic Contract, in accord with the Contract, the Articles of Agreement and the By-Laws of the plaintiff, became active members of the plaintiff Association entitled to the use of the new Temple premises for the purpose of Masonic activities only and also became liable for payment of their share of the cost of the erection and upkeep of the Temple as determined by the board of directors of the plaintiff Association.

The defendants commenced holding their meetings in the new Temple once it was opened in 1926 and paid in full their contribution to the erection of the Temple in accordance with the terms of the Temple Basic Contract, the Articles of Agreement, and the By-Laws of the plaintiff. During the period these defendants enjoyed the use of the new Temple they also enjoyed the privileges of membership in the plaintiff Association and, through their representatives on the plaintiff's board of directors, who were duly elected by the members of said unincorporated associations, actively participated in the management of the plaintiff Association. So long as these defendants continued holding their meetings in the new Temple they also paid their respective per capita share of the cost of "upkeep" of the Temple as determined by the board of directors of the Association.

In the period between the occupancy of the new Temple and the filing of the petition in this cause, 18 "New Members" have joined the plaintiff Association and have taken advantage of the privileges of membership therein, so that when the petition in this case was filed there were 39 active members in plaintiff Association.

On September 10, 1957, the By-Laws of the plaintiff Association were amended and the definition of "upkeep" as that term was used in the Temple Basic Contract and the By-Laws of the Association prior thereto, was changed to include (1) the cost of maintenance, and (2) interest charges and amortization of any debt then or thereafter placed on the Temple and to require that each active member should be charged for all such items of upkeep on a fixed and uniform basis, to be determined by the privileges accorded such active member.

Sometime in December, 1960, one of the original members of the plaintiff Association—West Gate Lodge No. 445—withdrew from membership in the Association and refused to pay its share of the upkeep of the Temple accruing after termination of its membership. This precipitated litigation which culminated in a decision of this court, *Masonic Temple Association of St. Louis v. Farrar*, Mo.App., 422 S.W.2d 95 (1967).[1] In the *Farrar* case this court held that the plaintiff, having voluntarily submitted the controversy with the West Gate Lodge No. 445, to two state fraternal society committees of the Grand Lodge of the Masonic Order had thereby entered into common law arbitration and was conclusively bound by the arbitration award declaring that the Lodge and its membership could unilaterally withdraw from membership in plaintiff Association and could not thereafter be required to pay its share of the upkeep of the Temple.

Thereafter, on or about July 9, 1971, defendant St. Louis Lodge No. 20 (hereinafter, St. Louis) notified the plaintiff Association that its members had voted to move from the Temple and from that time forward it did not participate in the active management of the plaintiff nor pay the

---

1. Farrar was one of the members named as representative of the class of members of the West Gate Lodge No. 445, an unincorporated association, in this earlier suit.

periodic statements rendered it by the plaintiff for payment of its pro rata share of the upkeep of the Temple.

On or about April 1, 1972, Aurora Lodge No. 267 (hereinafter, Aurora) likewise notified the plaintiff that its members too had voted to move from the Temple no later than April 30, 1972. Aurora did move out of the Temple on or before April 30, 1972, and did not thereafter participate in the active management of the Temple Association nor pay the periodic statements rendered it by the plaintiff for the upkeep of the Temple.

Neither St. Louis nor Aurora had the consent of any of the members of the plaintiff Association to withdraw from same nor to terminate the payment of their proportionate share of the cost of upkeep of the Temple after they had withdrawn from the plaintiff Association. Despite repeated demands that each of these Lodges remit their respective payments for the upkeep of the Temple following their withdrawal from the plaintiff Association, they have both continued to refuse to pay same.

This petition seeking a declaratory judgment declaring the respective rights and liabilities of the parties under the Temple Basic Contract, the Articles of Agreement of the plaintiff Association and the By-Laws of the Temple Association enacted pursuant thereto, was filed in the Circuit Court of the City of St. Louis on the 28th day of June, 1973. In addition to a declaration of the rights and liabilities of the parties, plaintiff also sought a money judgment against each of the unincorporated associations; $7,200 with interest at the rate of 6% per annum from St. Louis and $2,100 with interest at the rate of 6% per annum from Aurora. Plaintiff sought no personal judgments against the individual members of either of the Lodges.

Although not specifically named as parties in the petition, plaintiff further sought a declaration of the rights and status of the Temple Association and each of its members so as to enable it to determine the equity positions of all of its members, and more particularly, if said members at the time of the filing of the petition were not members of the plaintiff at the time of its dissolution.[2]

Both St. Louis and Aurora filed Answers to the plaintiff's petition, as amended by interlineation. St. Louis' Answer was essentially a general denial but did contain specific allegations which are not pertinent to the issue here for resolution; they were directed, for the most part to allegations of mismanagement by plaintiff. Affirmative defenses of laches and res judicata were pleaded.

Aurora's Answer likewise was essentially a general denial of the allegations of plaintiff in its petition, as amended, together with allegations of mismanagement and the affirmative defenses of laches, res judicata and/or collateral estoppel.

Plaintiff filed replies to each of the defendants' Answers. Its reply to Aurora's Answer was filed on September 18, 1975, and that with respect to St. Louis, on October 16, 1975. Each Reply is identical, denying each and every allegation of defenses contained in defendants' Answers, and further alleging, as affirmative defenses, laches and estoppel to the affirmative defenses pleaded by the defendants.

With the case in this posture the defendants filed their separate, but also identical, Motions for Summary Judgment "on the ground that even if the facts alleged in Plaintiff's petition are true" they were entitled to a judgment "as a matter of law."

These latter Motions were filed on October 16, 1975, and on the same date, after some discussion between the trial court and counsel for the parties, the trial court ruled on a number of pending motions and sus-

---

**2.** Plaintiff amended its petition by interlineation on March 6, 1974 by amending paragraph 1 thereof by adding an allegation that it had been authorized to carry on this litigation by its Board of Directors, and striking paragraph 11 of said petition and substituting in its place a new paragraph 11 which did not result in any

drastic changes in the petition as originally pleaded. Aurora's Answer was filed on May 15, 1974, and St. Louis' on December 16, 1974. There were numerous motions filed by all parties which contributed to the delay in bringing the cause to issue earlier.

tained defendants' Motions for Summary Judgment because it felt that the opinion in the *Farrar* case was "binding."

A timely Notice of Appeal was filed by plaintiff.

We conclude that whether the *Farrar* decision is res judicata or estoppel by judgment is not a basis upon which summary judgment might properly be entered on the record in this case. Assuming, without deciding, that *Farrar* is res judicata or estoppel by judgment, as contended by defendants, plaintiff has, in its replies alleged that these defendants may not invoke these affirmative defenses by reason of laches or estoppel on their part. These pleadings raise fact issues which remain unresolved and therefore summary judgment does not lie. *Allen v. St. Luke's Hospital of Kansas City*, 532 S.W.2d 505, 507[2] (Mo.App.1975).

Reversed and remanded.

GUNN, P. J., and WEIER, J., concur.